[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-14772

_____

D.C. Docket No. 2:14-cv-01163-KS-WC

BONNY EDWARD TAYLOR,
as the Personal Representative and Administrator
of the Estate of Almus Reed Taylor,

Plaintiff - Appellant,

versus

HENRY P. HUGHES,
in his individual capacity,
BILL BLUE,
in his individual capacity, et al.

Defendants – Appellees.

_____

Appeal from United States District Court
for the Middle District of Alabama

_____

(April 3, 2019)

Before TJOFLAT, NEWSOM, and GILMAN,[*] Circuit Judges.

GILMAN, Circuit Judge:

Almus Taylor died from internal bleeding after being kept in a jail holding cell overnight.  Bonny Edward Taylor, Almus's father and the Administrator of Almus's estate, sued the jail guards under 42 U.S.C. § 1983 and Alabama state law, alleging that they were deliberately indifferent to Almus's serious medical needs.  The district court dismissed Bonny's claims because of qualified immunity, state-agent immunity, and Alabama Code § 14-6-1.

This appeal raises two questions: (1) whether qualified immunity shields the guards from Bonny's deliberate-indifference claim based on the U.S. Constitution, and (2) whether state-agent immunity and Alabama Code § 14-6-1 shield the guards from Bonny's state-law claims.  For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

## I.    BACKGROUND

Several material facts in this case are subject to genuine disputes, but we will resolve such disputes in Bonny's favor because his claims were dismissed on

---

[*] Honorable Ronald Lee Gilman, United States Circuit Judge for the Sixth Circuit, sitting by designation.

summary judgment.  With this understanding in mind, we will apply the law to the following factual scenario:

On November 16, 2013, Covington County Deputy Kyle Adams found Almus in a battered pickup truck that was stopped in the middle of the road.  The driver-side door of the truck was in the truck's bed.  Almus was lying across the seat, had scratches on his arms, and was unable to walk on his own.  Deputy Adams called Emergency Medical Services (EMS) and the Alabama Highway Patrol.

An EMS team and Alabama State Trooper Chase Amis came to the scene. The parties dispute whether EMS performed a medical evaluation.  Although Almus said that he had been in an accident, Trooper Amis claimed to have seen no evidence that an accident had actually occurred.  Almus refused to take an ambulance to the hospital unless he could bring his dogs.  The EMS team refused to accommodate Almus's request, so they asked him to sign a release stating that he did not want to go to the hospital.  Almus was unable to sign the release, but the EMS team accepted Almus making a mark on the form.  Trooper Amis then arrested Almus for driving under the influence and took him to the Covington County Jail.

Defendants Ben Hunter, Bill Blue, and Roy Parker were the jail guards on duty.  Almus arrived at 9:33 p.m., appeared highly intoxicated, and had to be

3

assisted while walking to the holding cell. According to the guards, Trooper Amis said that Almus was "medically cleared" and "just drunk." But the Booking Medical Log reflects Almus's statement that "he [was] all busted up from [a] car wreck."

Also in dispute is whether Almus cried out for help during the night and whether the guards heard Almus's cries. According to several of Almus's fellow detainees, Almus spent several hours moaning and crying out in pain. They said that Almus told the guards that he had been in an accident and was "dying" and "broke up" inside. The record further contains evidence that Almus begged for medical attention, but was told by the guards to "shut up." None of the guards called for medical help.

According to jail guard Hunter, however, he checked on Almus at 5:00 a.m. and asked if Almus needed medical attention. Almus purportedly replied that he was in pain but could wait until the nurse arrived a little later. Hunter's deposition testimony, however, is inconsistent with that from one of Almus's fellow detainees and is not corroborated by other evidence.

The jail's nurse arrived at around 6:00 or 6:30 a.m. that morning. When the nurse tried to assess Almus's condition, he slid onto the ground and spit up blood. An officer called 911 and Almus was taken away in an ambulance. Almus died on his way to the hospital from internal bleeding.

Bonny sued the jail guards on behalf of Almus's estate, alleging that the guards violated Almus's rights under both the U.S. Constitution and state law. The district court concluded that the guards were protected by qualified immunity, state-agent immunity, Alabama Code § 14-6-1 (a statute that provides conditional immunities to sheriffs and jail guards). As a result, the court granted summary judgment for the guards on all counts. Bonny then filed this timely appeal.

## II.    ANALYSIS

### A.    Standard of review

Summary judgment is appropriate if the evidence before the court demonstrates that "there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review de novo the district court's grant of summary judgment. *Pace v. CSX Transp., Inc.*, 613 F.3d 1066, 1068 (11th Cir. 2010) (reviewing state-law claims); *Tinney v. Shores*, 77 F.3d 378, 380 (11th Cir. 1996) (reviewing federal claims).

### B.    Constitutional claims and qualified immunity

Qualified immunity shields "government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This doctrine "balances two important interests—the need to

5

hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*  There are two parts to the qualified-immunity analysis: (1) the relevant facts must set forth a violation of a constitutional right, and (2) the defendant must have violated a constitutional right that was clearly established at the time of defendant's conduct.  *Id.* at 232.

Bonny contends that the guards violated Almus's constitutional rights by being deliberately indifferent to his serious medical needs.  Under the Eighth Amendment, prisoners have a right to receive medical treatment for their illnesses and injuries.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Deliberate indifference to the serious medical needs of a prisoner is therefore a constitutional violation.  *Id.* Pretrial detainees like Almus are protected to the same extent as prisoners by the Fourteenth Amendment's due process clause.  *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1115 (11th Cir. 2005).

To establish a constitutional deliberate-indifference claim, Bonny must demonstrate "(1) [that Almus had] a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and [Almus's] injury."  *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009).  The district court concluded that Bonny did not set forth

6

sufficient evidence to raise a genuine dispute of material fact regarding the first two elements of that claim.

### 1. *Serious medical need*

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 1307 (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002)). "[T]he medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (citation and internal quotation marks omitted). Because Almus was not assessed by a physician, the question before us is whether Almus had a serious medical need that a reasonable lay person would have easily recognized as requiring a doctor's attention. *See Mann*, 588 F.3d at 1307. We also consider whether a delay in treatment exacerbated the medical need or caused additional complications. *Hill*, 40 F.3d at 118–89.

The guards were presented with conflicting information when Almus was brought to the jail. Although Trooper Amis said that Almus was "medically cleared" and "just drunk," Almus reported that he was "all busted up from [a] car wreck." Regardless of this initial uncertainty, the facts presented by Bonny show

that a material adverse change occurred during the night.  Other detainees reported that Almus spent several hours moaning, crying out in pain, and begging for medical help.  Almus was allegedly told by the guards to "shut up."  The guards, however, claim that Almus seemed fine and was just breathing heavily and moaning.

This conflict in testimony presents a genuine dispute of material fact as to whether Almus had a serious medical need, thus precluding summary judgment in the guards' favor.  *See* Fed. R. Civ. P. 56(a); *see also Kuhne v. Florida Dep't of Corr.*, 745 F.3d 1091, 1096–97 (11th Cir. 2014) (concluding that, in a prisoner's deliberate-indifference claim, a factual dispute about whether the prisoner signed a form refusing treatment precluded summary judgment).  If Almus was begging for medical help, crying out in pain, and informing the guards that he was dying, then a reasonable jury could conclude that a lay person would recognize the need for a doctor's attention.

### 2.    *Deliberate indifference*

Deliberate indifference to a serious need is a constitutional violation because it "constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion)).  And "[c]hoosing to deliberately disregard" an inmate's complaints of pain "without any investigation or inquiry" is

being willfully blind to pain.  *Goebert v. Lee County*, 510 F.3d 1312, 1328 (11th Cir. 2007).

A reasonable jury could conclude that the guards were not entitled to rely on Trooper Amis's statement that Almus was "just drunk," particularly because Almus reported that he was "all busted up from [a] car wreck."  In addition, a jury could conclude that the guards' willful disregard of what they heard and observed during the night made them deliberately indifferent to Almus's serious medical needs.

The district court also erred by requiring Bonny to present evidence that the guards knew the cause of Almus's injury and the specific nature of Almus's medical problem.  It concluded that "[e]ven if Defendants were aware of the cries of pain that [the other detainees] testify [that Almus] made during the night, the risk of internal bleeding was not 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"

But a guard does not need to know a detainee's specific medical condition to be deliberately indifferent to his or her serious medical need.  *M.D. by Stukenberg v. Abbott*, 907 F.3d 237, 252 (5th Cir. 2018) (concluding that courts do not require state officials to be warned of a "*specific* danger" to be held liable for deliberate indifference to a serious medical need (emphasis in original)).  Liability can attach

9

even if a prison official knows only that, if no action is taken, the detainee faces a "substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Almus's guards could therefore have been liable for deliberate indifference if Almus had been suffering from, say, appendicitis or another condition that was totally unrelated to the car crash if they ignored Almus's cries for help and medical attention. In other words, a jury could find that a reasonable lay person, witnessing an individual crying out in pain for several hours and stating that he was "dying" and "broke up" inside, would recognize that a doctor's attention was necessary to address whatever health problem the individual might be experiencing.

## C.    State-law claims and state-agent immunity

The guards next claim immunity under Alabama state law. Section 14-6-1 of the Alabama Code provides immunity for jail guards "as long as such persons are acting within the line and scope of their duties and are acting in compliance with the law." Ala. Code § 14-6-1. In addition, Alabama state-agent immunity shields state employees from tort liability regarding discretionary acts unless they acted willfully, maliciously, fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of the law; violated federal or constitutional law; or did not comply with Alabama laws, rules, or regulations. *Hollis v. City of Brighton*, 950 So. 2d 300, 307–08 (Ala. 2006).

10

As discussed in the prior section, the guards potentially violated Almus's constitutional rights by being deliberately indifferent to his serious medical needs. And § 14-6-1 and state-agent immunity do not immunize the guards from liability under state law if they violated Almus's constitutional rights. *See* Ala. Code § 14-6-1; *Ex parte Rizk*, 791 So. 2d 911, 913–14 (Ala. 2000) (stating that state-agent immunity does not protect state agents "when the Constitution or laws of the United States . . . require otherwise . . . ." (quoting *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000)). The district court thus erred in granting summary judgment to the guards on Almus's state-law claims.

## III.    CONCLUSION

For all the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.