[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10774
Non-Argument Calendar
_____

D.C. Docket No. 6:15-cv-02346-KOB-SGC

ROY M. CANNON,

Plaintiff-Appellant,

versus

CORIZON MEDICAL SERVICES, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(November 15, 2019)

Before MARCUS, MARTIN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Roy Cannon, a prisoner proceeding pro se, appeals the dismissal of three

claims, and the grant of summary judgment on the remaining claims, in his 42

U.S.C. § 1983 action.  He brought this action alleging deliberate indifference to his serious medical needs, in violation of the Eighth Amendment to the United States Constitution.  Cannon argues that the district court erred in holding that the delayed treatment of his broken leg did not amount to deliberate indifference. After careful review, we affirm.

## I.

In July 2016, Cannon filed an amended complaint asserting claims against the Alabama Department of Corrections; the Commissioner of the Alabama Department of Corrections; two officers of the Alabama Department of Corrections, Lewis Johnson and Officer Duncan; Corizon Medical Services, LLC ("Corizon"); and nine Corizon employees, namely Dr. Hugh Hood, Karen Amborski, Christiane Clay, Karen Alexander, Tammy Bryant, Nurse Coleburn, LaFaye Thurmon Benford, Meloni McDougle, and Debbie Bunn.  Cannon, who uses a wheelchair, alleged that on the morning of April 5, 2014, a nurse was aiding him in leaving the shower area when "the front wheels of the shower chair fe[ll] into a broken tile," causing Cannon to be "thrown to the floor."  Cannon yelled in pain.  A correctional officer entered the shower area and attempted to lift Cannon from the floor.  Cannon demanded the officer stop because his "pain level [was] nearing the point of losing consciousness" and he believed his leg was broken.

2

The nurse reported the fall to her supervisor, who contacted the health services administrator. But "no one offered any help other than Tylenol and to wrap his legs with bandages." All the while, his "legs began to swell [and] turn [b]lack and [b]lue." For two days[1] he "begged and pleaded with [the] . . . [n]urses as well as anyone who came around" to help him.

Two days later, Cannon was taken for an X-ray. The X-ray showed Cannon had "major breaks in his [t]ibia and in his fibula in his right leg." At that point, Cannon was given pain medication. That same afternoon, Cannon was taken by ambulance to a hospital. Cannon alleged that doctors confirmed he suffered "[m]ajor [b]reaks in his leg" and "made it clear" he needed surgery. But the hospital was "not allowed to operate." Instead, "there was an attempt to manually straighten [Cannon's] right leg and a cast was placed on it."

On April 27, 2014, Cannon returned to the hospital, where doctors planned to remove his cast. After reviewing new X-rays, though, doctors discovered Cannon's bone had not healed. He returned to the hospital again on May 23, 2014, but his leg still was not healed. On June 20, 2014, Cannon visited the hospital once again. Cannon's doctors told him that, because they were not permitted to

---

[1] Cannon's amended complaint asserted he was denied adequate medical treatment for three days. But the magistrate judge noted Cannon's own allegations showed two days elapsed between his fall and his visit to the hospital for treatment. In his appellate brief, Cannon now maintains he asked for medical treatment for two days before he was taken to a hospital.

3

operate, the state of his leg on that day was "the best it could ever be."  Cannon alleged he still suffers persistent "deformities in his right leg due to Corizon denying him proper medical care."  He also alleged he endured "extreme pain and suffering" for two days before he was taken to a hospital.  Cannon asserted the defendants were deliberately indifferent to his serious medical needs and violated his constitutional rights.

Cannon's complaint was referred to a magistrate judge, who construed it as asserting the following claims: 42 U.S.C. § 1983 claims for violations of the Eighth Amendment against the Alabama Department of Corrections; a claim for supervisory liability against the Commissioner of the Alabama Department of Corrections for failing to repair the broken shower tile that caused his fall; and § 1983 claims against the remaining defendants for deliberate indifference to his serious medical needs in violation of the Eighth Amendment.

The magistrate judge recommended dismissal of all claims except Cannon's Eighth Amendment claims against Corizon and its employees.  See 28 U.S.C. § 1915A (providing that a district court shall screen prisoner civil complaints and dismiss any claims that are "frivolous, malicious, . . . fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief"); see also 28 U.S.C. § 1915(e)(2)(B).  Specifically, the magistrate judge recommended dismissing claims against the Alabama Department

of Corrections because it is a state agency that is immune from suit in a § 1983 action under the Eleventh Amendment. The magistrate judge recommended dismissing the vicarious liability claim against the Commissioner of the Alabama Department of Corrections because Cannon did not allege either that the Commissioner personally participated in the failure to repair the broken tile or that there existed "widespread abuse" linking the Commissioner's actions with the broken tile. The magistrate judge further recommended dismissing Cannon's § 1983 claims against the correctional officers because the amended complaint did not set out facts showing the officers were deliberately indifferent to Cannon's medical needs. Finally, the magistrate judge recommended finding that Cannon alleged sufficient facts in support of his claims against the Corizon defendants for deliberate indifference to his medical needs.

The district court dismissed the Alabama Department of Corrections, the Commissioner of the Alabama Department of Corrections, and the two correctional officers as defendants. The district court referred claims against the remaining defendants to the magistrate judge for further proceedings. The magistrate judge then directed the remaining defendants to file a special report addressing Cannon's factual allegations.

The defendants filed their special reports and supporting documentation, which the magistrate judge construed as motions for summary judgment. In their

5

reports, the remaining defendants disputed Cannon's description of how he suffered his injuries and his allegations that they were deliberately indifferent to his medical needs. Defendants insisted that, after Cannon's fall, his abrasions were cleaned and dressed; he was offered Tylenol, but refused it; the health administrator was notified; and he was placed in a healthcare unit and given pillows for his legs. Nurses then "continuously monitored" Cannon's injuries. The day after his injury, he was prescribed Motrin 400. Two days after the injury, on Monday morning, Cannon was taken for an X-ray, which revealed a fracture to his distal tibia and a possible fracture near his ankle joint.

Cannon was then transported to SportsMed Orthopedic Surgery and Spine Center ("SportsMed"). At SportsMed, he saw an orthopedist who wrote a plan for closed treatment, which included "plac[ing] him in a short-leg cast," "giv[ing] Norco 7.5 mg for [his] pain," and "repeat[ing] X-rays of his right tibia" in two weeks. Defendants claim Cannon was then returned to the correctional facility, where he was continuously monitored by the nursing and medical staff.

On April 25, 2014, Cannon was again transported to SportsMed, where he saw the same orthopedist who treated him on April 7. In his visit notes, the orthopedist observed that X-rays of Cannon's right tibia and fibula showed "no displacement of his fracture" and that Cannon reported "mild pain." The

orthopedist planned to "continue non-operative management" and to perform additional X-rays in four weeks.

Cannon had follow-up orthopedist and a radiologist appointments in May and June 2014.  Notes from a May 1, 2014 visit to the radiologist show the radiologist observed no fracture or dislocation and both Cannon's left ankle and knee appeared "normal."  During Cannon's May 23 appointment, the orthopedist observed "minimal[] tender[ness] at the fracture site" and a "right tibia shaft fracture," but no additional malalignment.  The orthopedist planned to "continue non-operative management" and "recommend[ed] an additional four weeks of casting."  Notes from Cannon's June 20 visit to the orthopedist state that Cannon "report[ed] no pains or problems with his cast" and that the doctor observed "no instability with stressing of the fracture site area and clinically [] good alignment."  The orthopedist again planned to "continue non-operative treatment" and repeat X-rays in four weeks.

The defendants' special reports asserted that they never denied or delayed Cannon's medical care.  They argued Cannon's Eighth Amendment claims failed because he did not show the defendants possessed actual knowledge of an excessive risk to his health or safety and intentional indifference to that risk.  They also argued that Cannon had failed to assert claims for medical malpractices under

7

the Alabama Medical Liability Act.  Cannon timely responded to one of defendants' special reports and did not file a response to the other.

The magistrate judge issued a report and recommendation advising that the district court (1) dismiss, without prejudice, all claims against Alexander, Coleburn, and McDougle and (2) grant the motion for summary judgment filed by Corizon, Hood, Amborski, Clay, Bryant, Bunn, and Benford and dismiss Cannon's claims against them with prejudice.  The magistrate judge found that Coleburn had never worked at the facility where Cannon was detained and that neither Alexander nor McDougle were served with the amended complaint and therefore recommended dismissal, without prejudice, of all claims against those defendants. The magistrate judge also found that, because Corizon was a corporation providing prison medical services, it could only be found liable if the alleged constitutional violation was the result of its policy or custom.  Because Cannon failed to allege such a policy or custom, the magistrate judge recommended dismissal of Cannon's claims against Corizon with prejudice.  Finally, the magistrate judge found that Hood, Amborski, Bryant, Bunn, Clay and Benford were not deliberately indifferent to Cannon's serious medical needs and recommended dismissal of all claims against them with prejudice.

Cannon objected to the magistrate judge's report and recommendation. Over his objection, the district court adopted the magistrate judge's recommendations,

8

dismissed all claims against Alexander, Coleburn, and McDougle without prejudice, and dismissed all claims against Corizon, Hood, Amborski, Clay, Bryant, Bunn, and Benford with prejudice.  Cannon timely appealed.

## II.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  We review a district court's grant of summary judgment de novo, viewing all evidence and drawing all reasonable inferences in the light most favorable to the non-moving party.  Owen v. I.C. Sys., Inc., 629 F.3d 1263, 1270 (11th Cir. 2011).

A prisoner's Eighth Amendment right to be free from the unnecessary and wanton infliction of pain is violated when a prison official is deliberately indifferent to the prisoner's serious medical need.  See McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999).  To prevail on such a claim, the plaintiff must first demonstrate an objectively serious medical need.  Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).  Then, the plaintiff must show that prison officials acted with deliberate indifference towards that need.  Id.  This requires proving (1) that the prison official had subjective knowledge of a risk of serious harm; (2) that the official disregarded that risk; and (3) that the official's conduct amounted to more than gross negligence.  Goebert v. Lee County, 510 F.3d 1312, 1326–27

9

(11th Cir. 2007). "Even when medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs." Nam Dang ex rel. Vina Dang v. Sheriff, Seminole Cty. Fla., 871 F.3d 1272, 1280 (11th Cir. 2017).

**III.**

The sole issue on appeal is whether the delay in providing an X-ray for Mr. Cannon's leg amounted to deliberate indifference to his serious medical need.[2] Cannon contends that the two-day delay amounted to the infliction of unnecessary suffering and more should have been done to diagnose and treat his leg. He argues that an X-ray of his injured leg could, and should, have been taken on the day of his accident and that the treatment he received during the period between his accident and his X-ray was insufficient. We conclude that the undisputed evidence, viewed in the light most favorable to Cannon, does not show that the defendants refused to treat Cannon or were deliberately indifferent to his medical needs.

Cannon argues that there is a dispute of fact as to whether Corizon staff had subjective knowledge of the seriousness of his injury. Shortly after his fall, a nurse

---

[2] Cannon did not object to the magistrate judge's recommendation that his claims against Corizon be dismissed with prejudice, thereby waiving his right to challenge on appeal the district court's dismissal of claims against that defendant. See 11th Cir. R. 3-1. On appeal, Cannon also abandoned his claims against Coleburn, Alexander, and McDougle by failing to challenge the district court's dismissal, without prejudice, of his claims against them for lack of proper service.

noted that Cannon reported pain in his knee and ankle, an abrasion on his right toe, and a "goose egg" on his right ankle. Another nurse examined Cannon's leg the afternoon of his fall and noted that his right ankle was mildly swollen and "slightly bluish in color." In his amended complaint, Cannon alleged that, shortly after the accident, his "legs began to swell, turn [b]lack and [b]lue" and it was "obvious even to the untrained eye that major damage had occurred." He also alleged that "[e]ach nurse that s[aw] the condition of [his] legs expressed their major concerns and agreement[] that it was a very bad situation."

We credit specific allegations in a pro se plaintiff's sworn complaint in considering his opposition to summary judgment. Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1098 (11th Cir. 2014). However, these allegations do not demonstrate that Corizon staff were subjectively aware either that Cannon's leg was broken or that there was a risk that serious harm would result from delaying the X-ray of his right leg until the following Monday morning, when a radiologist was available. See Taylor v. Hughes, 920 F.3d 729, 733 (11th Cir. 2019) ("The medical need must be one that, if left unattended, poses a substantial risk of serious harm." (alteration adopted and quotation marks omitted)). Cannon claims that his leg was swollen and miscolored and that nursing staff recognized it to be a serious injury. This is not sufficient to establish that these symptoms made it obvious that his leg was broken or in need of greater care than that which was provided to him.

11

As such, we do not find a dispute of fact as to whether medical staff had a "sufficiently culpable state of mind" to support a claim of deliberate indifference. See Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996) (quotation marks omitted).

Even if the Corizon employees had the requisite state of mind, the undisputed evidence shows that they neither disregarded a risk to Cannon's health nor acted in a manner rising above gross negligence. We are hesitant to conclude that a doctor was deliberately indifferent when the prisoner received medical care. Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989). It is undisputed that, on the day of Cannon's fall, a nurse examined his leg, cleaned and dressed his abrasions, and transferred him to the prison healthcare unit. The same day, a nurse on duty reported Cannon's injury to Dr. Hood, who prescribed Cannon pain medication, and gave orders to medical staff regarding the care of his leg. In the time between the Saturday-morning accident and the Monday-morning X-ray, medical staff regularly examined Cannon, placed ice on his leg, offered him pain medication, advised him to keep his leg elevated, and monitored him to ensure he was comfortable until X-rays could be performed.

Cannon contends that "more should have been done" to diagnose and treat his injury, such as conducting an X-ray of his leg on the day of his injury, conducting "other tests," and providing treatment for the pain he experienced. But

12

a difference of opinion between the prison's medical staff and a prisoner concerning the proper diagnosis or course of treatment is usually insufficient to support a claim of deliberate indifference.  Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991).  Because Cannon received timely medical treatment, his opinion that he should have been provided with an X-ray or other testing immediately, as opposed to on Monday, does not rise to the level of deliberate indifference.

Nor has Cannon shown that the delay in providing him with an X-ray was unreasonable.  For claims based on delayed treatment, we have required the plaintiff to "place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed."  Owen v. Corizon Health Inc., 703 F. App'x 844, 847 (11th Cir. 2017) (per curiam) (unpublished) (citing Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), overruled in part on other grounds by Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508 (2002)).  While Cannon alleged that his treatment resulted in permanent deformities to his right leg, he attributed this to Corizon's denial of surgery, rather than the delay in the treatment he received.  As such, we find no evidence of a detrimental effect of the two-day delay between his injury and the X-ray of his leg.

**AFFIRMED.**