[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14862
Non-Argument Calendar
_____

D.C. Docket No. 2:14-cv-01163-KS-WC

BONNY EDWARD TAYLOR,
as the Personal Representative and Administrator of the
Estate of Almus Reed Taylor,

Plaintiff-Appellee,

versus

BILL BLUE,
in his individual capacity,
ROY PARKER,
in his individual capacity, and
BENJAMIN HUNTER,
in his individual capacity,

Defendants-Appellants.
_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(September 21, 2020)

Before GRANT, LAGOA, and LUCK, Circuit Judges.

GRANT, Circuit Judge:

Almus Taylor died in a jail holding cell, hours after telling his guards that he had just been in a car accident and after crying out that he was dying. We have already held in an earlier opinion that a jury could reasonably conclude that Taylor's jail guards were deliberately indifferent to his serious medical need. His guards now ask us for qualified immunity anyway because they say that the law was not clearly established on this point. We disagree.

## I.

Taylor was put in a jail holding cell after a state trooper found him drunk in a pickup truck. According to the jail guards on duty that night, the trooper said that Taylor was "medically cleared" and "just drunk." *Taylor v. Hughes*, 920 F.3d 729, 732 (11th Cir. 2019). But Taylor told the jail guards that he was "all busted up" from a car wreck. *Id.* As it turns out, he was internally bleeding. For the next several hours, fellow inmates heard Taylor crying in pain, begging for medical attention, and telling the guards that he was "dying" and "broke up" inside. *Id.* One guard, apparently fed up with the noise, told Taylor to "shut up." *Id.* Taylor died a few hours later.

His estate sued the jail guards for deliberate indifference. The district court concluded that the estate could not show a constitutional violation and granted summary judgment in favor of the guards based on qualified immunity.

We reversed. Although we identified the "initial uncertainty" brought on by the state trooper's report that Taylor was medically cleared, we said that the facts showed "a material adverse change" during the night. *Id.* at 733. Taylor's pleas

2

for help and cries of pain, we concluded, could lead a reasonable jury to find that even a lay person would recognize his need for medical attention. *Id.* at 734. We also held that a reasonable jury could conclude that the guards had been willfully blind to Taylor's need for help. *Id.* On remand, the guards tried for qualified immunity again—this time arguing that the law was not clearly established. The district court found otherwise, and they now appeal.

## II.

We review de novo the denial of summary judgment based on qualified immunity, resolving all factual disputes in favor of the plaintiff. *McCullough v. Antolini*, 559 F.3d 1201, 1202 (11th Cir. 2009). Government officials acting within their discretionary authority are immune from suit unless their actions "violated a constitutional right" and the "right was clearly established at the time of the alleged violation." *Patel v. Lanier Cnty.*, 969 F.3d 1173, 1181 (11th Cir. 2020). We have no doubt that the law was clearly established that Taylor's guards could not ignore his pleas for medical help.[1]

Under our precedent, it has long been clearly established that "knowledge of the need for medical care and intentional refusal to provide that care constitute[s] deliberate indifference." *Harris v. Coweta Cnty.*, 21 F.3d 388, 393 (11th Cir. 1994). It is also well established that a "few hours' delay" in treating serious and painful injuries like broken bones may amount to deliberate indifference. *Id.* at

---

[1] Taylor's estate also argues that our earlier opinion already decided this issue. The argument has some force, but we did not there address the clearly established prong of the qualified-immunity doctrine. Instead, our analysis—like the district court's—only addressed whether a constitutional violation occurred.

3

394.  We have therefore held that jailers may be found deliberately indifferent when they did not take "any steps to actually secure immediate medical attention" for a detainee "whose need for prompt treatment appeared dire."  *Harper v. Lawrence Cnty.*, 592 F.3d 1227, 1235 (11th Cir. 2010).

Given this backdrop, Taylor's guards were on clear notice of their obligation to take meaningful steps to secure immediate attention for Taylor.  But our decision in *Goebert v. Lee County* made their duty even more plain.  *See* 510 F.3d 1312 (11th Cir. 2007).  The detainee there alerted a jailer to the fact that she may have been having a miscarriage; she reported that "she had been leaking fluid for more than a week, that the problem had grown worse in the previous four days, and that she needed to see an obstetrician."  *Id.* at 1327.  She was ignored for a day and the baby miscarried.  *Id.* at 1329.  We held that the official there was not entitled to qualified immunity.  *Id.* at 1331.

Neither are Taylor's guards.  Just like the detainee in *Goebert*, Taylor sounded the alarm about his medical condition.  Not only did he report that he was "all busted up" from a car wreck, but he also told them he was dying and begged for medical attention.[2]  "Choosing to deliberately disregard, without any investigation or inquiry, everything any inmate says amounts to willful blindness."  *Id.* at 1328.  And that was quite clear before Taylor's guards chose to ignore him.

**AFFIRMED.**

---

[2] One of the officers, Bill Blue, contends that he had less information than the other officers about Taylor's condition.  But his argument goes to whether he was willfully blind to Taylor's need for help—an issue we already decided should go to the jury.  *See Taylor*, 920 F.3d at 734. We will not reopen the matter now.  In any event, the evidence shows that another officer told him about Taylor's pain and his car accident.