[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13387

Non-Argument Calendar

_____

ROBERT RALPH DIPIETRO,

Plaintiff-Appellant,

*versus*

DOCTOR LARETHA URETT LOCKHART,

Defendant-Appellee,

FARMER,
Chief Counselor at Rutledge
State Prison, et al.,

2                    Opinion of the Court                    22-13387

                                                        Defendants.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 4:20-cv-00035-CDL-MSH

_____

Before LUCK, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

Robert DiPietro, a prisoner at Rutledge State Prison, sued Doctor Laretha Lockhart, the prison's dentist, for violating his Eighth Amendment right to be free from cruel and unusual punishment. DiPietro alleged that Lockhart was deliberately indifferent to his severe tooth pain by failing to treat his fractured filling for thirteen months. He also sued Sharon Lewis, the statewide medical director, for causing the alleged constitutional violation. On preliminary review, the district court dismissed the claim against Lewis and, later, granted summary judgment for Lockhart. DiPietro appeals both decisions. After careful review, we affirm the dismissal of the claim against Lewis but vacate the summary judgment for Lockhart and remand for further proceedings.

## FACTUAL BACKGROUND[1]

DiPietro arrived at Rutledge State Prison in August 2016. Lockhart was the prison's dentist at the time. To initiate dental care, prisoners placed sick-call requests, describing their symptoms. Nurses collected these sick-call requests, and dental assistants scheduled appointments based on the symptoms' severity. Lockhart was not involved in scheduling patients or reviewing sick-call requests. Her role was creating treatment plans and treating patients who had appointments.

Lockhart's treatment plans dictated when treatments were scheduled and where they could take place. The prison prioritized dental treatment based on certain standard operating procedures. Under these procedures, dentists categorized conditions as emergent, urgent, or routine. Emergent conditions were life threatening and required immediate care. Urgent conditions caused severe pain or infection and required treatment within seven days. All other conditions were routine and were treated in the order the requests were received. Prisoners with emergent or urgent conditions could be transferred to the Augusta State Medical Prison for treatment, but those with routine conditions were treated at their resident prison.

---

[1] We provide the following facts "in the light most favorable to" DiPietro, weighing all reasonable inferences and "resolv[ing] all material disputes of fact" in his favor. *Alcocer v. Mills*, 906 F.3d 944, 948 n.4 (11th Cir. 2018) (citation omitted).

On June 8, 2017, DiPietro filed a grievance, claiming that he submitted sick-call requests about a toothache that were ignored. A week later, he was seen by Lockhart and complained about the toothache.  Lockhart's examination revealed no signs of infection or fracture.  She offered to provide over-the-counter pain medication, but DiPietro declined because he already had the same medication for his knee.  Lockhart recommended no further treatment.

On June 28, DiPietro believed the same tooth had fractured as the pain became severe and constant, causing headaches.  Two days later, he filed another grievance, again claiming that his sick-call requests about his tooth pain were ignored.  In August the grievance was denied, so he appealed to the Georgia Department of Correction's statewide medical director, Sharon Lewis, who partially granted the appeal and stated that "appropriate action [would] be taken."

Following another sick-call request, DiPietro was seen by Lockhart on August 16, 2017, and he told her about his severe pain and related headaches.  He also explained to her that the over-the-counter medication was not working.  Lockhart's examination revealed that a previous filling on DiPietro's tooth was fractured.  Lockhart recommended a routine filling restoration but did not prescribe pain medication.  Since the restoration was considered routine, DiPietro was put on the routine treatment list.  But Lockhart acknowledged that she could have sent DiPietro to the Augusta State Medical Prison for treatment if she believed his condition required immediate care.

In February 2018, DiPietro was still awaiting his filling restoration. At a follow-up appointment with Lockhart, DiPietro told her that his pain was becoming more severe, spreading from his tooth to his head and neck and impacting his ability to eat and sleep. Lockhart offered to prescribe over-the-counter pain medication, but DiPietro again declined because that medication was still not working. Lockhart did not change her treatment plan, and informed DiPietro that the delay in his filling restoration was because of the prison's inoperable autoclave—the sterilization equipment necessary for dental procedures.

In May 2018, after placing another sick-call request, DiPietro visited Lockhart and, again, explained that he was in severe pain that affected his ability to eat, sleep, and concentrate. This time Lockhart accepted DiPietro's pain complaint but only prescribed over-the-counter pain medication, despite DiPietro explaining that this medication had not been working for several months.[2] Lockhart explained that the autoclave had been replaced, that DiPietro remained on the list for a filling restoration, but that the list was backed up.

---

[2] In her affidavit, Lockhart stated that this was the only visit in which DiPietro complained of pain. Her affidavit directly conflicts with DiPietro's affidavit, creating disputed facts that must be resolved in DiPietro's favor in assessing whether Lockhart is entitled to summary judgment. *See Alcocer*, 906 F.3d at 948 n.4.

By June 2018, DiPietro's pain became even worse, and he started placing weekly sick-call requests.[3]  By August, he told his brother about his severe pain and had his brother call prison officials multiple times to advocate for more immediate treatment. DiPietro's brother was "very stressed to hear" that DiPietro was in "pain constantly."  Eventually, on September 20, 2018, Lockhart restored the filling.  DiPietro made no further complaints about this tooth.

## PROCEDURAL HISTORY

In February 2020, DiPietro sued Lockhart and Lewis (among other prison officials) under 42 U.S.C. section 1983.  He brought an Eighth Amendment claim against Lockhart, alleging that she was deliberately indifferent to DiPietro's severe tooth pain. And he brought a supervisor liability claim against Lewis.  To support that claim, he alleged that Lewis denied his grievance appeal and that he sent Lewis a letter explaining his need for dental care.

On a preliminary review of the complaint, the district court dismissed DiPietro's supervisor liability claim against Lewis because there were not sufficient facts showing Lewis's personal participation in DiPietro's treatment or knowledge of the alleged

---

[3] Lockhart disputes that these sick-call requests were ever placed.  But Lockhart also states that she never was involved with the sick-call request process and that these requests were never kept in the prisoner's medical records.  So all we are left with is DiPietro's sworn statement that he placed weekly sick-call requests about his fractured filling pain.

22-13387                Opinion of the Court                7

constitutional violation.  But it allowed the deliberate indifference claim against Lockhart to proceed.

Next, Lockhart moved to dismiss the complaint for failure to state a claim.  The district court denied the motion, concluding that the complaint alleged sufficient facts showing that Lockhart was deliberately indifferent to DiPietro's tooth pain for more than a year, in violation of the Eighth Amendment's prohibition on cruel and unusual punishment.

After written discovery, Lockhart moved for summary judgment, arguing that she was entitled to a judgment as a matter of law because the undisputed material facts showed that she sufficiently treated DiPietro's pain when she learned about it and that any delay was outside her control.  This time the district agreed and granted summary judgment for Lockhart.  It explained that Lockhart was not deliberately indifferent because there was "no objective medical evidence in support" of DiPietro's claim that his pain significantly worsened and any delay in treatment was outside Lockhart's control.

DiPietro appeals the district court's dismissal of his supervisor liability claim against Lewis and its summary judgment for Lockhart.

## STANDARD OF REVIEW

We review de novo the district court's sua sponte dismissal of a prisoner's claim against a prison official.  *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017).  Similarly, we review de novo a district court's grant of summary judgment, considering all

evidence in the light most favorable to the non-movant and resolving all material fact disputes in the non-movant's favor. *Alcocer*, 906 F.3d at 948 n.4, 950. The moving party is only entitled to summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).

## DISCUSSION

We first consider the district court's dismissal of DiPietro's supervisor liability claim against Lewis. Then we address the district court's summary judgment for Lockhart.

### Supervisor Liability Claim

First, DiPietro argues the district court erred in dismissing his supervisor liability claim against Lewis because there were sufficient facts showing that Lewis caused DiPietro's Eighth Amendment right to be violated. We disagree.

A district court must review a prisoner's civil complaint against a prison official before a responsive pleading is filed. *See* 28 U.S.C. § 1915A(a); *see also Waldman*, 871 F.3d at 1289. In doing so, "[t]he [district] court must dismiss any complaint that fails to state a claim upon which relief may be granted." *Waldman*, 871 F.3d at 1289 (citing 28 U.S.C. § 1915A(b)(1)). While we "liberally construe[]" a pro se complaint, it still has to provide "at least some factual support" that "allows the [district] court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Id*.

22-13387                Opinion of the Court                9

Under section 1983, a prisoner may sue a prison official, acting under color of state law, for constitutional violations caused by the official's conduct. *See Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016). The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. A prison official's "[d]eliberate indifference to a prisoner's serious medical needs" violates this prohibition. *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

But "supervisory officials are not [vicariously] liable under [section] 1983 for the unconstitutional acts of their subordinates." *Roy v. Ivy*, 53 F.4th 1338, 1351–52 (11th Cir. 2022). "Rather, to hold a supervisor liable . . . , the plaintiff must show: (1) that the supervisor personally participated in the alleged unconstitutional conduct; or (2) there was a causal connection between" the supervisor's actions "and the alleged constitutional deprivation." *Id*. (citing *Keith v. DeKalb County*, 749 F.3d 1034, 1047 (11th Cir. 2014)). To establish a causal connection, the plaintiff must show: (1) "a history of widespread abuse"; (2) "a supervisor's custom or policy [that] results in deliberate indifference to constitutional rights"; or (3) a supervisor "directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so." *Myrick v. Fulton County*, 69 F.4th 1277, 1298 (11th Cir. 2023) (quotation omitted). Because section 1983 does not allow vicarious liability, these showings are "extremely rigorous." *Id*.

Here, DiPietro's supervisory claim against Lewis did not meet these "extremely rigorous" showings. *See id*. His complaint

had a "statement of claims" section laying out the facts supporting his claims. That section did not mention Lewis or Lewis's actions at all. Instead, it alleged facts about DiPietro's deliberate indifference claim against Lockhart. The complaint only mentioned Lewis when discussing exhaustion of administrative remedies, alleging that Lewis denied DiPietro's grievance appeal and that DiPietro sent a letter to Lewis explaining his need for dental care. The complaint did not explain what his appeal said, when it was filed, or why it was denied. Nor did it give details about when the letter was sent or what it specifically said.

Without more, the bare facts in the complaint did not show Lewis's "personally participat[ion]" in the alleged constitution violation because there were no facts showing that Lewis, as the statewide medical director, was personally involved in DiPietro's dental care. *See Roy*, 53 F.4th at 1351–52. Further, the complaint did not sufficiently allege Lewis caused the alleged constitutional violation as there were no facts showing "a history of widespread abuse," "a custom or policy [that] result[ed] in deliberate indifference" to inmates' serious need for dental care, a "direct[ive]" from Lewis that resulted in deliberate indifference to such needs, or Lewis's specific knowledge that Lockhart was deliberately indifferent to DiPietro's serious need for dental care. *See Roy*, 53 F.4th at 1351–52. Thus, DiPietro failed to state a supervisor liability claim against Lewis, and the district court properly dismissed it. *See Waldman*, 871 F.3d at 1289.

DiPietro responds that the complaint sufficiently alleged Lewis caused an Eighth Amendment violation because DiPietro's appeal and letter gave Lewis knowledge that Lockhart was deliberately indifferent to DiPietro's serious need for dental care and Lewis failed to do anything about it. He analogizes the facts in his complaint to the facts alleged in *Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008).

But *Yates* is distinguishable. There, the prisoner alleged, in detail, that his family told the prison supervisor about the constitutional violations. *Id*. at 1319. Specifically, the complaint alleged that the prison supervisor knew about his subordinates using "verbal and physical harassment" to retaliate against the plaintiff for filing grievances and "declined to investigate and correct these problems." *Id*. at 1319. Because those facts sufficiently showed that the prison supervisor caused the alleged constitutional violation, we concluded the complaint stated a valid supervisor liability claim. *Id*. at 1322. Here, unlike in *Yates*, DiPietro's complaint did not provide any detailed allegations about what Lewis knew or did not know. Critically, it never alleged that Lewis knew Lockhart was denying necessary dental care for thirteen months because it never alleged what exactly DiPietro's appeal or letter said or when Lewis received those materials. Without those key facts establishing Lewis's knowledge, DiPietro did not sufficiently allege that Lewis caused a constitutional violation, and thus, he failed to state a supervisor liability claim.

*Deliberate Indifference Claim*

Next, DiPietro contends that the district court erred in granting summary judgment to Lockhart because when the facts are properly viewed in his favor, Lockhart was not entitled to a judgment as a matter of law. We agree.

To show an Eighth Amendment violation for deliberate indifference to serious medical needs, the prisoner must demonstrate (1) that he "had a serious medical need," (2) the prison official's "deliberate indifference to that need," and (3) "causation between that deliberate indifference and [the prisoner's] injury." *Taylor v. Hughes*, 920 F.3d 729, 733 (11th Cir. 2019) (quotation omitted).

Under the first element, a serious medical need is a condition that either "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) (quotation omitted). Here, DiPietro complained of severe pain, and Lockhart diagnosed him with a fractured filling that needed to be restored. As Lockhart concedes, this was a serious medical need. *See Farrow v. West*, 320 F.3d 1235, 1244 (11th Cir. 2003) (concluding that a prisoner's need for dentures was a serious medical need in light of the dentist's diagnosis and the prisoner's severe pain).

Under the second element, deliberate indifference has three requirements: the official must (1) be "subjectively aware that the inmate was at risk of serious harm[,]" (2) "disregard[] that risk[,]" and (3) act with "subjective recklessness as used in the criminal

law." *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc) (quoting *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)). Criminally reckless conduct means the official "actually knew his conduct—his own acts or omissions—put the [inmate] at substantial risk of serious harm." *Id.* (quotation omitted). Even if the requirements are met, the official still "cannot be found liable . . . if he responded reasonably to th[e] risk." *Id.* (quotation omitted).

A significant delay in necessary dental treatment can constitute deliberate indifference. *See Farrow*, 320 F.3d at 1247–48. For example, in *Farrow*, a prison dentist delayed providing a prisoner dentures for fifteen months after prescribing them. *Id.* at 1238–41. The prisoner's affidavit stated that he told the dentist at his first visit that he was suffering severe pain, bleeding gums, and weight loss and emphasized those symptoms during later visits. *Id.* at 1239–41, 1247 n.20. The dentist moved for summary judgment, asserting that the prisoner's "medical records demonstrate[d] that he failed to make specific complaints about suffering from painful and bleeding gums." *Id.* at 1247 n.20. The district court granted summary judgment to the dentist. *Id.* at 1242. On appeal, we reversed, concluding that the prisoner provided sufficient evidence to avoid summary judgment. *Id.* at 1247–48. We accepted the prisoner's affidavit as true because disregarding it based on the prisoner's medical records would be "misplaced" in analyzing "a motion for summary judgment." *Id.* at 1247 n.20. When the facts were properly viewed in the prisoner's favor, we determined that the dentist acted with deliberate indifference because he recognized the need for dentures, recognized the prisoner's ongoing serious

problems, and delayed treatment for fifteen months without a reasonable justification. *Id*. at 1247.

This case closely mirrors *Farrow*. Accepting DiPietro's affidavit as true, as we must at this stage, Lockhart had "subjective[] aware[ness]" of DiPietro's severe pain in August 2017 when she was told that he suffered from severe pain that was not relieved by over-the-counter pain medication, recognized his fractured filling, and recommended a restoration. *See Wade*, 106 F.4th at 1255. She also had "subjective[] aware[ness]," as early as February 2018, that his pain was worsening, spreading from his tooth to his head and neck and impacting his ability to eat and sleep. *See id*. And she "disregarded that risk" by failing to restore DiPietro's filling for thirteen months after recommending it, *see id*., similar to the dentist who delayed necessary treatment for fifteen months in *Farrow*. Equipped with knowledge of DiPietro's severe pain over this period, she did nothing to treat it other than prescribe over-the-counter pain medication, which she was told was not working for several months. Based on these facts, a reasonable jury could conclude that Lockhart was deliberately indifferent because the evidence showed she "actually knew" that her conduct—in not restoring the filling for thirteen months despite DiPietro telling her about his intense and worsening pain—would put DiPietro "at substantial risk of serious harm." *Id*. (quotation omitted). Because there was evidence supporting each requirement, DiPietro provided sufficient evidence to show that Lockhart was deliberately indifferent. *See id*.; *see also Farrow*, 320 F.3d at 1247.

Under the final element, the prisoner must show that the prison official's deliberate indifference caused the constitutional injury. *Goebert*, 510 F.3d at 1327 (citation omitted). "Causation, of course, can be shown by personal participation in the constitutional violation." *Id*. (citation omitted). Here, DiPietro's injury was Lockhart's deliberate indifference to his severe and worsening pain over thirteen months. As Lockhart concedes, this pain went away after the filling restoration. When the facts are viewed in DiPietro's favor, the evidence sufficiently shows that Lockhart's inability to treat DiPietro's fractured filling over this extended period caused DiPietro's injury. Because DiPietro has provided sufficient evidence to meet the three elements of an Eighth Amendment deliberate indifference claim, Lockhart is not entitled to a judgment as a matter of law, and the district court erred by entering summary judgment in her favor.

Lockhart defends the district court's ruling on two grounds. First, she argues that DiPietro failed to create genuine disputes of material fact regarding his complaints of severe and worsening pain and Lockhart's subjective awareness of it because his "self-serving" affidavit contradicted the record. In support, she cites her own affidavit stating that DiPietro never complained about the pain until May 2018, dental records corroborating her account, medical records that do not indicate tooth pain, and court records showing that DiPietro appeared in court. In contrast, DiPietro's affidavit states that he told Lockhart about his severe pain in August 2017 after his filling fractured, told her during later visits about his significantly worsening pain, and told her that over-the-counter pain medication

was not working on multiple occasions. His affidavit is supported by the grievance record which provides a contemporaneous account of his severe pain, his institutional file which states that his brother called multiple times to advocate for immediate care due to his severe pain, and his dental records which showed a fractured filling diagnosis in need of treatment. This was sufficient evidence to create genuine disputes of material fact, and the district court erred by resolving these disputes of fact in Lockhart's favor. *See Farrow*, 320 F.3d at 1247 n.20, 1248 (concluding that the prisoner's affidavit about his pain created a genuine dispute of material fact, despite the prisoner's medical records and the dentist's differing account).

Second, Lockhart argues that she was not deliberately indifferent and did not cause a constitutional injury because she had no control over the delay. In her view, she provided adequate treatment by prescribing and performing the filling restoration; the thirteen-month delay was due to factors outside of her control—the inoperable autoclave and the backlog of the restoration list. While she may not have had control over those factors, she solely controlled DiPietro's treatment plan. Under the prison's standard operating procedures, a dentist can deem a condition urgent if it causes severe pain, requiring immediate treatment within seven days and transport to the Augusta State Medical Prison. Lockhart acknowledged she could have done this. Instead, at least for purposes of our analysis, she knew DiPietro had a serious need for a filling restoration, received his complaints of severe and worsening pain that affected his ability to eat and sleep, and failed to change

her treatment plan for thirteen months, despite having the ability to get him immediate treatment within seven days. This meets the elements of a deliberate indifference claim under the Eighth Amendment.

## CONCLUSION

Thus, we affirm the dismissal of DiPietro's supervisor liability claim against Lewis. But we vacate the summary judgment for Lockhart and remand for further proceedings.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**.