**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Michael MAROLLA, John Henry Kittles, a/k/a J.H. Kittles, a/k/a Jaybird, David Strachan, Douglas Golden, Defendants-Appellants.**

**No. 84–3099.**

United States Court of Appeals,
Eleventh Circuit.

July 22, 1985.

J. Stanford Lifsey, P.A., Tampa, Fla., for defendants-appellants.

David T. Weisbrod, Tampa, Fla., for J. Kittles.

R. Douglas MacPherson, Tampa, Fla., for D. Strachan.

James D. Whittemore, Tampa, Fla., for D. Golden.

Robert W. Merkle, U.S. Atty., Tampa, Fla., Gloria C. Phares, Washington, D.C., for plaintiff-appellee.

Before VANCE and ANDERSON, Circuit Judges, and HENLEY *, Senior Circuit Judge.

R. LANIER ANDERSON, III, Circuit Judge:

Appellants appeal from their convictions for conspiracy to import and conspiracy to possess and distribute marijuana. Finding no error on the part of the district court, we affirm.

## I. FACTS

After a jury trial, appellants were convicted of conspiracy to import and conspir-

---

* Hon. J. Smith Henley, U.S. Circuit Judge for the  Eighth Circuit, sitting by designation.

acy to possess and distribute marijuana.[1] The appellants planned to import marijuana from Jamaica into the United States. Appellant Golden provided the boat, the CALLIOPE, and piloted the boat on the initial trip to Jamaica. Once in Jamaica, Golden met with Ian Granger, a fugitive and the coordinator of the operation. Golden and Granger hired a Jamaican marine engineer, Anthony Chue-Sang, to repair the boat and to accompany the boat on its trip back to the United States. Difficulties subsequently developed between Granger and Golden, and Golden told Granger he was quitting and returned to the United States. A replacement captain, appellant Strachan, was selected to pilot the boat to the United States.

After purchasing the marijuana and other supplies, the boat set sail. On the third day out, as it was going through the Yucatan Channel, the CALLIOPE encountered heavy seas which bent one of its propeller shafts. Captain Strachan then ordered that the load be thrown overboard. Five days later, the CALLIOPE arrived at Pine Island, the designated off-loading spot for the marijuana. As they approached Pine Island, Strachan radioed for "Jay Bird," appellant Kittles' radio code name. A boat came alongside the CALLIOPE, and Strachan explained that they had dumped the load. Later the CALLIOPE was brought into Fort Myers. U.S. Customs officials boarded the vessel and found marijuana debris as well as one bale of marijuana which the conspirators apparently neglected to throw overboard.

## II. DISCUSSION

A. *Whether the District Court Abused its Discretion in Refusing to Grant a Severance*

Appellants challenge their convictions on numerous grounds, only two of which merit discussion. First, appellant Strachan argues that the district court erred in refusing to grant a severance and mistrial under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Appellant Strachan argues that he was prejudiced by the out-of-court statements of codefendant Marolla, as related by Marolla's landlady. At trial, Marolla's landlady testified that Marolla told her that he "had a big dope deal planned with Dave Strachan," and that he would have his rent money in a few weeks once the operation was completed. Marolla's landlady also testified that Marolla told her that he was expecting a phone call from appellant Strachan regarding a "boatload of pot coming in." The district court, acting *sua sponte,* raised the issue of the effect of Marolla's statements on appellant Strachan. On several occasions, the district court gave cautionary instructions that such testimony could be considered only as to Marolla and told the jury to disregard the statements about Strachan. The district court, however, denied appellant Strachan's severance motion because it believed the instructions cured any prejudice caused by the statements.

In *United States v. Astling,* 733 F.2d 1446, 1454 (11th Cir.1984), the court noted:

[C]oconspirators should be tried jointly ... and severance is not warranted despite the fact that a defendant may have participated in only a single aspect of the conspiracy.... The trial judge's decision to sever is discretionary; appellants must show that the judge abused his discretion in denying their motions to sever, and they can do so only by demonstrating "compelling prejudice." ... Such prejudice can arise from the admission into evidence of an out-of-court

---

1. Appellants Kittles and Strachan were convicted of conspiracy to import marijuana and conspiracy to possess over 1,000 pounds of marijuana with intent to distribute in violation of 21 U.S.C.A. § 963 and 21 U.S.C.A. § 846. Appellant Golden was convicted only of conspiracy to import marijuana in violation of 21 U.S.C.A. § 963. Appellant Marolla was convicted only of conspiracy to possess over 1,000 pounds of marijuana with intent to distribute in violation of 21 U.S.C.A. § 846. Additionally, appellant Strachan was convicted of being a United States citizen on the high seas in possession of marijuana with intent to distribute in violation of 21 U.S.C.A. § 955a(b).

statement admissible only against one non-testifying codefendant that implicates another codefendant.... Compelling prejudice, in the *Bruton* context, may occur even though the judge instructs the jury to consider the challenged evidence only against the proper codefendant.

*Id.* at 1454 (citations omitted). Similarly, the court recognized in *Astling* that:

[T]here are many circumstances in which this reliance [on the effectiveness of limiting instructions] is justified. Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently.... [I]n many such cases the jury can and will follow the trial judge's instructions to disregard such information. Nevertheless, ... there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored ... [such as] here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial.

*Id.* at 1455 (quoting *Bruton v. United States,* 391 U.S. 123, 135–36, 88 S.Ct. 1620, 1627–28, 20 L.Ed.2d 476 (1968)).

■ In determining whether the admission of the out-of-court statements constitutes reversible error, one must determine whether the "possible prejudice resulting from the failure of the jury to follow the trial court's instructions is ... so 'devastating' or 'vital' to the complaining defendant to require departure from the general rule allowing admission of evidence with limiting instructions." *Id.* at 1456 (quoting

*Parker v. Randolph,* 442 U.S. 62, 74, 99 S.Ct. 2132, 2140, 60 L.Ed.2d 713 (1979)).

In the instant case, appellant Strachan's defense, presented by way of final argument to the jury, was that he was merely hired by the organizer of the conspiracy, Ian Granger, to perform the legitimate task of piloting a boat from Jamaica to Florida, that he had no prior knowledge of the conspiracy, and that he was essentially coerced into joining the conspiracy. Thus, Strachan argues that the out-of-court statements were particularly prejudicial because they showed that he did have prior knowledge of the conspiracy. We disagree.

■ First, it is important to note that the trial judge's corrective instructions immediately *preceded* the testimony implicating defendant Strachan. Moreover, immediately after the testimony, the trial judge reiterated the fact that "the references ... to Mr. Strachan should not in any way be considered by the jury in your determination of the case as it involves Mr. Strachan." The fact that the corrective instructions were contemporaneous with the out-of-court statements increases the effectiveness of the corrective instructions. The fact that the prosecutor did not argue from the out-of-court statements in closing argument is also significant. *See Astling, supra* at 1456.

One of Strachan's coconspirators, Larry McBride, testified that Strachan had invented the coercion story to tell law enforcement officials if the conspirators were accosted.[2] Moreover, McBride testified as to Strachan's prior knowledge of the conspiracy. Similarly, McBride testified that Strachan knew the secret signals for contacting the coconspirators at the off-loading site.

Finally, Chue-Sang testified that Strachan gave the orders as to the precise manner of making the rendezvous with the

---

2. We note that Strachan's coercion story was itself inconsistent with the suggestion that he had no prior knowledge of the conspiracy. The notion that threats to himself or his family caused Strachan to pilot the boat from Jamaica to the United States is inconsistent with the argument that Strachan did not know the boat would be carrying marijuana since one does not need to coerce an individual to pilot a ship containing lawful cargo.

marijuana suppliers in Jamaica. This included piloting the CALLIOPE to a point offshore from Jamaica, turning off the CALLIOPE's running lights, and stopping the engines.

Given this very strong evidence that showed Strachan's knowing participation in the conspiracy, we cannot conclude that the district court abused its discretion in holding that the cautionary instructions were sufficient to cure any prejudice that resulted from the admission of the out-of-court statements.

### B. *Withdrawal from a Conspiracy*

Appellant Golden argues that the district court erred in refusing to instruct the jury on the defense of withdrawal from a conspiracy and the burden of proof pertaining thereto. Golden argues that he affirmatively disavowed and defeated the purpose of the conspiracy charged in Count I, importation of marijuana, by leaving the vessel and communicating his intention of abandonment to his coconspirators. We disagree.

■ Binding precedent in this circuit holds that because conspiracy is an inchoate offense which is complete regardless of whether the object of the conspiracy is achieved, "withdrawal is impossible once an overt act is committed." *United States v. Nicoll,* 664 F.2d 1308, 1315–16 (5th Cir. Unit B), *cert. denied,* 457 U.S. 1118, 102 S.Ct. 2929, 73 L.Ed.2d 1330 (1982);[3] *see also United States v. Jimenez,* 622 F.2d 753, 757–58 (5th Cir.1980); *United States v. Heathington,* 545 F.2d 972, 973 (5th Cir. 1977).

■ In the instant case, there was no evidence of withdrawal prior to Golden's commission of an overt act, *i.e.,* the trip to Jamaica. Thus, no evidence was presented of a proper withdrawal from the conspiracy, and the district court did not err in refusing to give the requested instruction.

We do note that withdrawal is not altogether irrelevant in the conspiracy context after the commission of an overt act since "withdrawal precludes liability for acts occurring *after* the withdrawal." *United States v. Nicoll,* 664 F.2d at 1315 n. 7.

The appellants' remaining arguments are without merit and warrant no discussion.

For the above-stated reasons, the decision of the district court is

AFFIRMED.

---

**3.** In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all of the post-September 30, 1981, decisions of Unit B of the former Fifth Circuit. *Id.* at 34. *Cf. Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).