UNITED STATES of America,
Plaintiff-Appellee,

v.

David JIMENEZ, Michael Anthony Daum, Louis Perez, Edward Fernandez, and Abrahim Zuriarrian, Defendants-Appellants.

No. 84–5459
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Jan. 24, 1986.

Paul Morris, Miami, Fla., for defendants-appellants.

Leon B. Kellner, U.S. Atty., Charles Senatore, Linda Collins Hertz, Jon May, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before FAY, JOHNSON and CLARK, Circuit Judges.

PER CURIAM:

Appellants, David Jimenez, Michael Anthony Daum, Louis Perez, Edward Fernandez and Abrahim Zuriarrian, were each convicted of possession with intent to distribute more than 1,000 pounds of marijuana, as well as conspiracy to possess the same amount, both in violation of 21 U.S.C. §§ 841 and 846. Appellants were tried jointly, and assert the following as reversible errors. First, they contend that the Fourth Amendment prohibition on illegal search and seizure was ignored when appellants were arrested without probable cause. Second, they contend that the Sixth Amendment right to confront witnesses was denied twice, once in an alleged *Bruton* violation,[1] and again by a breach of the witness sequestration rule. After a careful review of the record and the applicable law, we conclude that appellants' constitutional rights have not been invaded.

I. FACTS

On the evening of January 25, 1983, a group of state and federal law enforcement officers monitored the off-load of 8,000

---

1. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1969), prohibits the admission of a co-defendant's out-of-court confession which also incriminates other defendants.

pounds of marijuana from a lobster boat in Florida Bay to a fuel truck parked in Islamorada, Upper Matecumbe Key. At eleven p.m., agents in the Bay observed the lobster boat rendezvous with a T-Craft[2] and an ocean racing vessel. They watched several people transfer bales of marijuana to the T-Craft. Sometime after midnight, the T-Craft left the Bay and proceeded through the inter-coastal waterway to a dock near appellant Jimenez' house in Islamorada. DEA agents, William Simpkins and Reed Robertson, had been staking out the Jimenez house since eight p.m. that evening. From a wooded area on the property, the agents listened as the bales were unloaded from the T-Craft. Then the agents observed seven people move the bales from the dock area to a fuel truck parked near the street. Although it was dark, the agents could observe the figures and the clothing of the bale handlers, but not their faces. At times, the agents used a nightscope to better observe the off-load and to help identify some of the handlers. Throughout their surveillance of the offload, Simpkins and Robertson remained in radio contact with other agents in the vicinity of the house as well as those observing activity in the Bay. At about four a.m., after the fuel truck had been loaded, five people attempted to leave the Jimenez house. Three drove off in an early model Oldsmobile, and two left in a pickup truck. Neither vehicle had its headlights illuminated. Agent Simpkin radioed this information to agents stationed about a quarter of a mile from the house. They then stopped a large old car containing three individuals. The car lights were illuminated but the occupants were arrested nonetheless and returned to the Jimenez house. A pickup truck was also stopped, its two occupants arrested and returned to the house as well. Those arrested were appellants Jimenez, Daum, Perez, Fernandez and Zuriarrian.

Appellants moved to suppress all evidence obtained from the arrests near the Jimenez house. The district court denied the motion, finding probable cause to arrest since the course of events observed both at sea and on land conformed to a pattern of drug trafficking common in the Florida Keys.

Appellants' trial began on September 6, 1983 but was declared a mistrial before completion due to the district judge's illness. A new trial commenced on December 5 at which time appellants Fernandez and Zuriarrian moved to sever their trials from that of appellant Perez. Movants requested severance on the basis of Perez' post-arrest statement[3] inculpating them as well as himself. The prosecutor agreed to redact the statement to limit its incrimination to Perez alone,[4] and the district court denied severance. In his opening statement to the jury, however, the prosecutor inadvertently recited the fully inculpatory version of Perez' statement and appellants moved for a mistrial. The motion was denied, but the district court immediately cautioned the jury that opening statements are not evidence. That instruction was repeated again at the close of the defense's opening statement.

Given the circumstances of the surveillance and arrests, a key issue at trial was proper identification of the smugglers. Agent Simpkins gave detailed testimony as to his observations of those loading the fuel truck at Jimenez' house. Despite the darkness, Simpkins was able to describe the smugglers' height, weight and clothing. Simpkins had given similar testimony at the first trial, being the only witness to testify before mistrial. His identification testimony at the second trial was closely corroborated by testimony from Agent Robertson. At the close of Robertson's cross-examination, he stated that he had read Simpkins' prior trial testimony as part of his preparation for the second trial. Ap-

---

2. A T-Craft is an open fishing boat approximately 23 feet in length.

3. Appellants were questioned by the arresting officer as to why all three had pant legs wet below the knee. Perez responded, "We just got off a boat."

4. The redacted statement read, "I just got off a boat."

pellants moved for a mistrial or to strike Robertson's testimony as his preparation had violated the witness sequestration rule. Rejecting both motions, the district court instead informed the jury about the prior mistrial, the sequestration rule and its violation. The jury was then instructed that the violation should be considered in evaluating the weight of Robertson's testimony, specifically his credibility in corroborating the identification. Trial proceeded, and the jury ultimately found appellants guilty on all counts.

## II. STANDARDS OF REVIEW

▮▮▮ Appellants contend that the district court's denial of their motions for suppression, severance and mistrial each constitute reversible error. The district court's denial of the suppression motion may be reversed only if the court erred in finding probable cause to arrest, given all the facts and circumstances within the collective knowledge of the law enforcement officers. *See United States v. Blasco*, 702 F.2d 1315 (11th Cir.1983). The district court's refusal to sever the trials of Fernandez and Zuriarrian is a matter of trial court discretion and may be reversed only if the effect of the *Bruton* violation "is so 'devastating' or 'vital'" to appellants' case that subsequent instructions could not cure the resulting prejudice. *See United States v. Marolla*, 766 F.2d 457, 458 (11th Cir. 1985). The district court's denial of a mistrial for violation of the sequestration rule is likewise a matter of discretion, and reversible only on a showing of prejudice. *See United States v. Womack*, 654 F.2d 1034 (5th Cir. Unit B 1981).

## III. DISCUSSION

### A. *Lack of Probable Cause*

Appellant's principal attack on the denial of suppression is based on the district court's observation that "if these same events had happened on an inland lake in Tennessee or Nebraska or South Dakota, it [sic] wouldn't amount to probable cause.... [But] right off the bat it becomes more than just sort of suspicious in the Florida Keys." Appellants claim that the court has created a "Florida Keys" exception to the Fourth Amendment. We disagree.

▮▮▮ The district court's candor should not be interpreted as a failure to determine the existence of probable cause to arrest appellants. "Probable cause exists where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe an offense has been or is being committed." *United States v. Blasco*, 702 F.2d 1315, 1324 (11th Cir.1983). A person of reasonable caution is not prohibited, moreover, from taking into account such factors as geographic location or known modus operandi in formulating his belief as to the occurrence of a crime. *See United States v. Four Million, Two Hundred Fifty-five Thousand Dollars*, 762 F.2d 895, 904 (11th Cir.1985); *see also Blasco* at 1325. As the *Blasco* court explained, when law enforcement agents in the Florida Keys collectively observe a series of events at sea and on land consistent with a marijuana off-load, they have probable cause to arrest those persons found in close proximity to the off-load site. *See id.* Just as in the case at hand, the officers in *Blasco* could not observe the participants clearly in the dark; instead, they arrested those present as well as those observed fleeing the site. *See id.* at 1321–22. The only difference between this case and *Blasco* lies in the fact that in this case the officers' surveillance of the marijuana handlers was interrupted for the short period of time during which the handlers drove away from the Jimenez house. Such an interruption has little significance when the arresting officers are located only a quarter of a mile from the house and have been immediately alerted by radio as to the suspects' departure, their number and their type of vehicles. The fact that one of the vehicles stopped actually had its headlights on rather than off is not sufficient to upset the reasonable belief that the vehicle and its

occupants were involved in the off-load. Such a discrepancy would be meaningful only if the facts indicated other traffic in the vicinity of the Jimenez house at four a.m. that morning. Absent evidence of such traffic, appellants' claim of mistaken identity is singularly unpersuasive.

### B. *The Bruton Violation*

Appellants Fernandez and Zuriarrian next contend that the district court erred in not severing their trials from that of appellant Perez. Shortly after the trio's arrest, Perez had responded to the arresting officer's question as to why all three were wearing damp clothes. Perez replied, "We just got off a boat." The prosecution planned to introduce this statement, but appellants motioned to exclude it or to sever the trials on grounds that if Perez exercised his right to not take the stand and be cross-examined, appellants would be deprived of their Sixth Amendment right to confront a witness. The prosecution then agreed to redact the statement to say "I [meaning Perez] just got off a boat." When the statement was first presented to the jury in the course of the government's opening statement, the original version was inadvertently used. Appellants moved for a mistrial but the district court instead repeated a prior instruction that opening statements are not evidence. This instruction was repeated again at the end of defendants' opening statements and the court then called a recess to further distinguish statements from evidence. The prosecution later used only the redacted statement in its presentation of the evidence.

Appellants assert that the trial court's handling of this incident flatly ignores Supreme Court precedent holding that a nontestifying co-defendant's out-of-court confession cannot be admitted in a joint trial if that confession also implicates other defendants. *See Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476 (1968). The Supreme Court stated that the prejudicial effect of such a confession may be so great that curative instructions cannot substitute for cross-examination, yet the latter is a practical impossibility if the co-defendant asserts his Fifth Amendment right to silence. *See id.* 88 S.Ct. at 1628.

 Despite the holding in *Bruton,* appellants must recognize that severance is not automatically appropriate even in this context. The statement at issue must directly, rather than indirectly, incriminate the other defendants, *see United States v. Garrett,* 727 F.2d 1003 (11th Cir.1984), and its prejudicial effect must be considered "devastating" or "vital" to defendants' case, *see United States v. Marolla,* 766 F.2d 457 (11th Cir.1985), before severance is required. It is true that under the circumstances presented to the jury in the opening statement,[5] the declaration *"[w]e just got off a boat"* directly refers to Fernandez and Zuriarrian as well as Perez. The statement is not sufficiently prejudicial, however, to warrant severance rather than a curative instruction. First, the original declaration was used only in the opening statement and not repeated again during testimony or closing argument. Its non-probative nature was emphasized twice by the district court. As the *Marolla* court observed, when the corrective instructions are given contemporaneously with the declaration and the declaration is not repeated later in the trial, the instructions are much more likely to cure the prejudicial effect of the declaration. Second, the declaration is not the same sort of "powerfully incriminating confession" to which the *Bruton* rule

---

5. The context in which the prosecutor made this statement indicates that the original phrasing referred to all three applicants:

When the first car is stopped, the Oldsmobile, we've got Perez, we have Zuriarrain, and we have Fernandez. And CPO Tom Arnold, Customs Patrol Officer, was there, and he's going to tell you that all three men had wet pants up to their ankles. He asked Mr. Perez "How did you get wet?" Mr. Perez responded, all in Spanish, "We just got off a boat." They searched the individuals and Mr. Arnold, CPO Arnold asked Mr. Perez "Well, let's go back to the boat."

Record, Vol. 3 at 45.

is directed. The declaration is ambiguous rather than obviously incriminating; it was probably intended to provide an alibi that appellants had been out fishing rather than drug smuggling. Consequently, its inherently prejudicial effect is quite limited. *See United States v. Astling,* 733 F.2d 1446 (11th Cir.1984) (the fact that the incriminating statement referred to defendants through code names attenuates its prejudicial effect). Third, the declaration was not devastating to the defense since there was ample evidence to connect the appellants to the off-load operation. Thus, we conclude that appellants have not demonstrated the compelling prejudice necessary to override the district court's discretion in denying severance.

### C. The Sequestration Violation

■■■ All appellants join in the last assertion of error, that the district court wrongfully failed to declare a mistrial upon learning that Agent Robertson had prepared for trial by consulting the trial testimony of Agent Simpkins. Appellants contend that this constitutes a violation of the witness sequestration order[6] and could only have been redressed by declaring a mistrial. We agree that Robertson violated the order, albeit inadvertently. Rule 615 was clearly invoked the afternoon before Robertson testified and counsel were given the opportunity to advise all witnesses that the rule had been invoked. Apparently, Robertson was not so informed and he read Simpkins' testimony from the prior mistrial on the morning after the sequestration order was given. Despite this violation of the order,[7] we conclude that the district court did not abuse its discretion in declining to grant a mistrial or to strike Robertson's testimony.

The district court relied on *United States v. Blasco,* 702 F.2d 1315 (11th Cir.1983), to determine the course of action appropriate under the circumstances. *Blasco* holds that a trial court has at least three sanctions at its disposal: citation for contempt; thorough cross-examination before the jury on the facts of the violation; or striking the testimony given. *See id.* at 1327. Striking testimony is "a serious sanction," appropriate only where "the defendants have suffered actual prejudice, and there has been connivance by the witness or counsel to violate the rule." *Id.*

The district court explicitly found no prejudice or connivance, and appellants have not cited any evidence of these prerequisites. The record does not show that Agent Robertson's corroborative testimony was influenced by the violation. For example, his testimony was not shown to be inconsistent with his own notes on the case.[8] Any similarity in Robertson's and Simpkins' description[9] of off-load is not necessarily attributable to Robertson's fifteen minute review of Simpkins' prior testimony. It more likely reflects the fact that the agents observed the off-load together and co-operated in developing a description

---

**6.** Pursuant to Rule 615 of the Federal Rules of Evidence, the district court ordered that all witnesses should be excluded from the court room when not actually testifying, and that witnesses should not discuss the case with or within hearing of any other witness.

**7.** The government argues that reading a witness' testimony from a prior trial does not constitute a violation of the order. It relies on Rule 615's language prohibiting the "hearing" of testimony. As this circuit held in *Miller v. Universal City Studios, Inc.,* 650 F.2d 1365 (5th Cir.1981), there is no difference between reading and hearing testimony for purposes of Rule 615. Either action can violate a sequestration order. Likewise, there is no merit in the government's

attempt to distinguish *prior* trial testimony from current trial testimony. Reading prior trial testimony violates the order. *See United States v. Bizzard,* 674 F.2d 1382, 1389 (11th Cir.1982).

**8.** Robertson's case notes were available to defense counsel at trial for the very purpose of determining prejudice from the violation.

**9.** Appellants suggest that Robertson's reading the testimony clearly influenced his own testimony since both agents at times used exactly the same phrases in describing their distance from the scene, the "thumping" sound of the off-loaded marijuana bales, the "30 minutes" duration of the off load and various other details.

of the participants for immediate use by other agents involved in the surveillance operation.[10] Furthermore, the record indicates that Robertson did not deliberately violate the sequestration order, nor did anyone induce him to read Simpkins' prior testimony. Under these circumstances, striking the testimony or declaring a mistrial would have been inappropriate sanctions. Instead, the district court chose *Blasco*'s intermediate option of "full-bore cross-examination" of the witness regarding the violation. In addition, the court fully instructed the jury about the prior trial, the reason for mistrial, the meaning of the witness sequestration rule and how its violation should affect jury deliberations. The district court adequately responded to the possibility of prejudice by specifically instructing the jury that a violation of the rule should be considered in evaluating Agent Robertson's credibility as a witness. Appellants' rights to a fair trial were not infringed.

For the foregoing reasons, we affirm the district court's denial of the motions at issue. The district court correctly determined that appellants were arrested with probable cause to believe they had committed a crime. The district court did not abuse its discretion in denying severance or a mistrial since appellants failed to make the requisite showings of prejudice.

AFFIRMED.

---

10. Simpkins and Robertson observed the offload together and remained in radio contact with other agents at sea and on land throughout the surveillance. They periodically transmitted their observations by radio to these agents.