[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10452

Non-Argument Calendar

_____

FELICIA LAMBERT,
TONY LAMBERT,

                                                          Plaintiffs-Appellees,

*versus*

DUNCAN HERRINGTON,
CITY OF SATSUMA, ALABAMA,

                                                          Defendants-Appellants.

———————————

Appeal from the United States District Court
for the Southern District of Alabama

D.C. Docket No. 1:19-cv-00854-KD-B

———————————

Before WILSON, ROSENBAUM, and LAGOA, Circuit Judges.

PER CURIAM:

Officer Duncan Herrington appeals the district court's denial of summary judgment in Felicia and Tony Lambert's (the "Lamberts") action against him pursuant to 42 U.S.C. § 1983 for violation of their civil rights under the First, Fourth, and Fourteenth Amendments as well as several state law causes of action. The district court concluded that the factual disputes in this case precluded the application of qualified immunity and two forms of state-law civil immunity. For the reasons expressed herein, we agree and thus affirm the district court's denial of summary judgment.

## I.    FACTUAL AND PROCEDURAL HISTORY

On October 9, 2017, several children were playing at the Lamberts' home. Among the children were the Lamberts' grandchildren, of whom they were temporary guardians, and their grandchildren's friends. The children were playing with airsoft guns near the home, and some of the pellets from the airsoft guns

went into the house, damaging the house as well as the Lamberts' television.

The children left three airsoft guns at the Lamberts' house after leaving the house. Because of the custody arrangement for the grandchildren in place at the time, Mrs. Lambert did not see the grandchildren in person for another two weeks. However, Mrs. Lambert's grandson texted her several times asking about how his friend could get the airsoft guns back, and Mrs. Lambert told her grandson that she would not return the airsoft guns until she spoke with the friend's parent. On October 24, 2017, Teresa Strickland, the stepmother of the child who left his airsoft guns at the Lambert home, called Mrs. Lambert seeking the return of the airsoft guns. A verbal dispute then ensued.

After Mrs. Lambert and Ms. Strickland were not able to agree about the timing and circumstances under which Mrs. Lambert would return the guns, Officer Herrington became involved. Hours after the phone call between Mrs. Lambert and Ms. Strickland, Officer Herrington arrived at the Lamberts' home with Ms. Strickland in the backseat, and both exited the police car. Officer Herrington approached Mrs. Lambert and explained that he was there because Ms. Strickland wanted to retrieve the missing guns. Meanwhile, Ms. Strickland stayed near the police car. The parties agree on little else about what happened next.

## A. The Lamberts' Factual Evidence

The Lamberts gave the following account in their depositions and affidavits. After Officer Herrington arrived, he told Mrs. Lambert, "you're going to go in the house and you're going to get these guns." When Mrs. Lambert asked "what if I say I don't have them," Officer Herrington grabbed her arm, placed handcuffs on her, and told her that she was going to go to jail. While taking Mrs. Lambert into custody, Officer Herrington "started taking his hand and twisting [her] arm and digging in[,] . . . actually put[ting] his fingernails into" her. Around the same time, Mr. Lambert came outside, and Mrs. Lambert called to her husband saying, "Tony, he's hurting me. . . . make him stop." According to Mrs. Lambert, Mr. Lambert then pled with Officer Herrington to make the arrest using minimal force. After handcuffing Mrs. Lambert, Officer Herrington dragged her over to the grass.

It was about that time the Mr. Lambert got involved. He testified that he told Officer Herrington to call the officer's supervisor. He attests that he never walked toward Officer Herrington when the officer was struggling with his wife. He testified that he walked over to the police car where Ms. Strickland was standing and told her to get off of his property. At that point, according to Mr. Lambert, Officer Herrington came "charging at" Mr. Lambert, swung him around, and told him to get out of Ms. Strickland's face. Mr. Lambert admitted to grabbing Officer Herrington's police vest with both hands in order to break his fall. Officer Herrington then performed a leg sweep, causing Mr. Lambert to fall down. Officer Herrington then placed his knee on Mr. Lambert's chest and

administered a choke hold using his thumb and index finger. During the encounter, Mrs. Lambert screamed "let him up, please get off him." According to Mrs. Lambert's affidavit, the only times she raised her voice or used profanity were "after Officer Herrington had attacked both [her] and [her] husband and [when she] told Teresa Strickland to get the fuck off [of her] property."

After placing Mr. Lambert in handcuffs, Officer Herrington said to Mr. Lambert, "how does it feel to get your ass whooped," and stated that he was under arrest for disorderly conduct. As a result of the encounter, Mr. Lambert had neck, shoulder and elbow injuries.

The grandchildren came outside shortly after Officer Herrington got off of Mr. Lambert. The Lamberts' son also came out of the house and told the grandchildren to go back inside. Officer Herrington noted that the neighbors could see what was happening and asked Mrs. Lambert to move further up the driveway under the carport, and she complied.

When Officer Herrington approached Mrs. Lambert about the airsoft guns that Ms. Strickland's son left, Mrs. Lambert explained that her home and television were damaged and that she wanted to file a report. Officer Herrington explained that it was too late because the incident happened weeks before.

After Mr. Lambert's arrest, the Lamberts then decided to turn the airsoft guns over to the police officers on scene. Still in handcuffs, they went inside the house to retrieve the guns.[1]

Eventually Officer Herrington transported Mr. Lambert to the local jail. Mrs. Lambert went to the jail separately to bail out her husband. After arriving at the jail, Mrs. Lambert told Officer Herrington that he never should have arrested her husband. At that point, Officer Herrington told her to sit down and that she was under arrest. After Mrs. Lambert complained about the force used when Officer Herrington detained her while they were at her house, Officer Parsons used a phone to take pictures of Mrs. Lambert's bruises as well as her damaged shirt. Mrs. Lambert complained of bruises on her arm, neck spasms, pain shooting down her arm, and swelling on her neck. Mrs. Lambert subsequently called her mother to ask her to come post bond so that Mrs. Lambert could be released from jail. During that conversation, Mrs. Lambert told her mother not to say anything at the jail because the officers might arrest the mother if the officers perceived disrespect. Mrs. Lambert's mother posted Mrs. Lambert's bond without incident and then drove Mrs. Lambert to an urgent care center.

Mrs. Lambert later spoke with Lieutenant Richard Dix to complain about Officer Herrington's use of force and the damage the airsoft guns did to the television at the Lamberts' home. As to

---

[1] Officer Marquis Parsons, who was also on scene, testified that he went inside with the Lamberts' son and ultimately retrieved the airsoft guns.

the television, Lieutenant Dix said that he would have to do an investigation prior to making a report because some of the children blamed the damage on Mrs. Lambert's granddaughter. Mrs. Lambert testified that the granddaughter at one point admitted to causing the damage but later recanted, saying that other children had coerced her into making the confession. As to the complaint against Officer Herrington, Mrs. Lambert submitted a citizen complaint form, and Lieutenant Dix informed Mrs. Lambert that she would also need to submit photographic evidence.

### B. Officer Herrington's Factual Evidence

Officer Herrington gave the following account of the events in his deposition. After arriving at the house, Officer Herrington approached Mrs. Lambert and told her that he was there because Ms. Strickland's stepson left his airsoft gun at the Lambert house and Ms. Strickland wanted to retrieve it. Mrs. Lambert then said that she would not turn over the airsoft gun until someone paid for her broken television. Mrs. Lambert further explained that her granddaughter shot the television. Officer Herrington then explained that because Mrs. Lambert had custody of the granddaughter at the time, there was no need to take a report because she was responsible for the granddaughter's actions. Mrs. Lambert later changed her story and said that she did not have the airsoft guns. During the course of the exchange, "every now and then [Mrs. Lambert] would turn around and yell at Miss Strickland." Specifically, she said things like Ms. Strickland should pay better attention to her child. Eventually, Officer Herrington told Mrs. Lambert that

she needed to turn over the property or she would go to jail, to which Mrs. Lambert replied, "[w]ell, then, take me to jail." Officer Herrington detained her, placing her in handcuffs.

While she was not under arrest at that point, Officer Herrington testified that he could have arrested her for theft of stolen property and disorderly conduct because of her failure to return the property and her yelling to the point that some of the neighbors came to the front of their house. The two struggled when Officer Herrington was handcuffing Mrs. Lambert, and Mr. Lambert got involved, placing his hand on Officer Herrington's shoulder. Officer Herrington then commanded Mr. Lambert to place his hands behind his back, and Mr. Lambert resisted being placed in handcuffs. Officer Herrington was able to take Mr. Lambert to the ground by using a maneuver that involved placing the officer's foot behind Mr. Lambert's foot. After Officer Herrington placed his forearm near Mr. Lambert's chin, Mr. Lambert rolled over and complied. Officer Herrington testified that he charged Mr. Lambert with disorderly conduct, a misdemeanor, rather than second degree assault, a felony, because of Mr. Lambert's age and lack of prior criminal history.

Eventually, the Lamberts' son retrieved the airsoft guns from the house and turned them over to a second officer on scene. Officer Herrington told Mrs. Lambert that an arrest warrant for disturbing the peace would be signed later, but because the Lamberts had custody of their grandchildren at the time, Officer

Herrington did not wish to arrest both of them at that time.[2] Officer Herrington transported Mr. Lambert to the local jail, and eventually Mrs. Lambert arrived to post his bond.  After what Officer Herrington calls belligerent behavior at the jail, he arrested her for disorderly conduct "[m]ainly for the way she was acting at her residence."

### C.  Criminal and Civil Case Procedural History

The Lamberts both appeared in court on their disorderly conduct charges.  After six months of good behavior, the charges were dismissed.

The Lamberts filed the instant suit against the City of Satsuma, Alabama, as well as Officer Herrington in his official and individual capacities.  In the operative complaint, Mrs. Lambert alleged a First Amendment violation for retaliatory arrest, Fourth Amendment violations for false arrest and excessive force, as well as state law claims for false arrest, false imprisonment, assault and battery, all against Officer Herrington in his individual and official capacities.  She further alleged respondeat superior liability against the City for assault and battery, false arrest and false imprisonment.

---

[2] According to a neighbor's affidavit, both Mr. and Mrs. Lambert were loudly yelling and using profanity such that she could hear the yelling from across the street, and that neighbor saw another neighbor come from the back of his house "to see what was going on."  Similarly, the other officer on scene, Marquis Parsons, testified in his deposition that Mrs. Lambert was "unruly, loud, [and] using obscene language."

Mr. Lambert alleged Fourth Amendment false arrest and excessive force claims as well as state law false imprisonment, false arrest, and assault and battery claims against Officer Herrington in his individual and official capacities.  Further, he alleged assault and battery, false arrest, false imprisonment claims against the City under a respondeat superior theory of liability.

The district court granted summary judgment to the City as well as to Officer Herrington in his official capacity, but it denied Officer Herrington's motion for summary judgment as to the claims against him in his individual capacity, finding that he was not entitled to qualified immunity.  This timely appeal followed.

## II.    STANDARD OF REVIEW

We review *de novo* a district court's denial of summary judgment.  *Taylor v. Hughes*, 920 F.3d 729, 732 (11th Cir. 2019).  "Summary judgment is appropriate if the evidence before the court demonstrates that 'there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law.'"  *Id.* (quoting Fed. R. Civ. P. 56(a)).

## III.    ANALYSIS

On appeal, Officer Herrington argues that the district court erred in not granting his motion for summary judgment on the basis of qualified immunity and two related state-law immunity doctrines.  "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known.'" *Brown v. City of Huntsville*, 608 F.3d 724, 733 (11th Cir. 2010) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)). Therefore, qualified immunity is appropriate only when a government actor is exercising a discretionary function and has not violated a clearly established statutory or constitutional right. *Id.* Similarly, Alabama state-law immunity applies only when a government actor is exercising a discretionary function and is inappropriate when he has violated someone's constitutional rights. *Taylor*, 920 F.3d at 734.

Whether Officer Herrington's conduct violated clearly established law turns on whether he had at least arguable probable cause to detain or arrest the Lamberts. Officer Herrington points to the record evidence that he had such probable cause. We recognize that facts, as construed in the light most favorable to the nonmovants at the summary judgment stage of the proceedings, *see Brown*, 608 F.3d at 724, may not be the actual facts of the case. Nonetheless, we approach the facts from the plaintiffs' perspectives "because the issues appealed here concern not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of clearly established law." *Edwards v. Shanley*, 666 F.3d 1289, 1292 (11th Cir. 2012) (quoting *Crenshaw v. Lister*, 556 F.3d 1283, 1289 (11th Cir. 2009)).

Therefore, we do not weigh the evidence on each side to determine whether Officer Herrington had arguable probable cause. Rather, we examine the evidence in the light most favorable

to the Lamberts.  As a result, we conclude that there is a material factual dispute as to whether Officer Herrington had probable cause—or even arguable probable cause—to arrest the Lamberts such that no amount of force was justified in arresting them.  Because of these factual disputes, neither qualified immunity nor the related state-law immunity doctrines are an appropriate basis for summary judgment in this case.  Thus, as explained in detail below, we affirm the district court's denial of summary judgment as to the claims against Officer Herrington in his individual capacity.

### A.  Federal Claims Concerning Mrs. Lambert's Arrest

Officer Herrington argues that he had at least arguable probable cause to arrest Mrs. Lambert for disorderly conduct based on her behavior at her home.  He notes that Mrs. Lambert admitted yelling at Ms. Strickland to "get the fuck off [Mrs. Lambert's] property."  He also contends that Mrs. Lambert was loud enough to draw both her husband and neighbors outside of their homes.

"There is no question that an arrest without probable cause to believe a crime has been committed violates the Fourth Amendment." *Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir. 1997).  "Probable cause exists if 'the facts and the circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed.'" *Id.* (quoting *United States v. Jimenez*, 780 F.2d 975, 978 (11th Cir. 1986)).  "To receive qualified immunity, an officer need not have actual probable cause, but only

21-10452                Opinion of the Court                13

'arguable' probable cause." *Brown*, 608 F.3d at 734. Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the defendant could have believed that probable cause existed to arrest the plaintiff. *Id.* And probable cause should generally defeat a retaliatory arrest claim. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019).

To determine whether Officer Herrington had probable cause to arrest Mrs. Lambert for disorderly conduct, we must examine the statutory text. In relevant part, the Alabama statute defining disorderly conduct provides as follows:

> (a) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he or she does any of the following:
>
> (1) Engages in fighting or in violent tumultuous or threatening behavior. [or]
>
> (2) Makes unreasonable noise.

Ala. Code § 13A-11-7.

Mrs. Lambert was arrested for violating subsection (a)(2), making an unreasonable noise. But merely making a loud noise is not sufficient to violate this statute. *Swann v. City of Huntsville*, 455 So. 2d 944, 950 (Ala. Crim. App. 1984). Rather, violating this subsection requires making a noise that is unreasonable under the circumstances. *Id.* Mrs. Lambert testified that the only time she used profanity while Officer Herrington was present was when she told Ms. Strickland to "get the fuck off [Mrs. Lambert's] property."

She also stated that she only yelled during that comment to Ms. Strickland and when she was pleading with Officer Herrington to use less force against her husband when taking him into custody. By contrast, Officer Herrington points to witness statements that the neighbors came outside because of the unreasonable noise and commotion she was causing.

A jury may consider these contrary statements at trial, but at the summary judgment stage, we must accept as true Mrs. Lambert's deposition testimony that the only loud noises she made that day were telling Ms. Strickland, a person with whom she was having a dispute and did not invite to her property, to leave the property—albeit in a rude way—and pleading with Officer Herrington to get off her husband when the officer placed his knee on Mr. Lambert's chest. *See Edwards*, 666 F.3d at 1292. Thus, given the stage of the proceedings and viewing the facts and evidence in the light most favorable to Mrs. Lambert, we cannot conclude that Officer Herrington had even arguable probable cause to arrest Mrs. Lambert for disorderly conduct.

Mrs. Lambert further contends that Officer Herrington did not only arrest her without probable cause but also that he did so in retaliation for comments that she made at the jail about the amount of force he used against her and her husband's remarks, as well as her opinions about her husband's arrest being unnecessary. On appeal, Officer Herrington argues that the arrest was not retaliatory and was in fact based on her conduct at her house earlier that day. He contends that he decided to not arrest Mrs. Lambert at her

house to allow her to supervise her grandchildren while Mr. Lambert was in jail. (Circumstances had changed, Officer Herrington argues, by the time Mrs. Lambert arrived at the jail because someone else was watching the grandchildren while Mrs. Lambert went to the jail to post bail for her husband. Thus, Officer Herrington contends that his arrest of Mrs. Lambert at the jail was not retaliatory, but instead based on her yelling and use of profanity while he was at her house earlier that day.

As already explained, we cannot conclude, while accepting all of Mrs. Lambert's factual evidence as true, that Officer Herrington had even arguable probable cause to arrest her for disorderly conduct. In the absence of probable cause, we look to three elements to determine whether Officer Herrington violated Mrs. Lambert's clearly established right to not be arrested for exercising her First Amendment speech right. To state a First Amendment retaliation claim, a plaintiff generally must demonstrate: (1) she engaged in constitutionally protected speech; (2) the defendant's retaliatory conduct adversely affected that protected speech; and (3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019).

Mrs. Lambert contends that, "[b]ut for asking for information about how to file a complaint against Herrington, she would not have been arrested at the jail." The record also contains a declaration from an expert who reviewed video of Mrs. Lambert's interaction with Officer Herrington at the jail. The expert

attests that the video shows that Officer Herrington arrested Mrs. Lambert shortly after she asked Officer Herrington why he hurt her arms and neck earlier at her house. These inquiries qualify as constitutionally protected speech. See City of Houston v. Hill, 482 U.S. 451, 461 (1987) ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."). Arresting someone for exercising the right to protected speech adversely affects that protection. While Officer Herrington contends that his arrest was based on Mrs. Lambert's conduct at her home, Mrs. Lambert has presented some evidence that she was arrested because of her constitutionally protected comments at the jail. Thus, an issue of material fact exists as to whether there was a causal connection between Mrs. Lambert's speech and her arrest, and ultimately whether Officer Herrington violated Mrs. Lambert's clearly established right to be free from arrest in retaliation for constitutionally protected speech. Qualified immunity is therefore inappropriate as to both Mrs. Lambert's Fourth Amendment arrest without probable cause claim and her First Amendment retaliatory arrest claim.

### B.  Federal Claims Concerning Mr. Lambert's Arrest

We now turn to the claims concerning Mr. Lambert's arrest. Officer Herrington arrested Mr. Lambert under subsection (a)(1) of the Alabama disorderly conduct statute, which bans "fighting or . . . violent tumultuous or threatening behavior." Ala. Code § 13A-11-7(a)(1).

On appeal, Officer Herrington argues that, even viewing the evidence in the light most favorable to Mr. Lambert, he had at least arguable probable cause to make an arrest because Mr. Lambert came towards him while he was taking Mrs. Lambert into custody and later grabbed his vest and resisted being placed into handcuffs. Mr. Lambert admits to grabbing Officer Herrington's vest as he was falling to the ground to help break his fall but denies fighting or physically engaging with the officer. At this procedural stage, we must accept Mr. Lambert's sworn denial as true. We also cannot conclude that merely holding on to someone in order to break a fall creates arguable probable cause to arrest someone for "fighting or . . . violent tumultuous or threatening behavior" under section 13A-11-7(a)(1). Thus, there is a factual issue as to whether Officer Herrington violated Mr. Lambert's Fourth Amendment right to be free from arrest without probable cause. Because of this, qualified immunity for both Mr. Lambert's false arrest and excessive force claims is inappropriate.

## C. Excessive Force

The Lamberts also allege that Officer Herrington used excessive force when he took them into custody at their house, in violation of their Fourth Amendment rights. On appeal, Officer Herrington contends that he used only *de minimis* force to take both Mr. and Mrs. Lambert into custody, which he contends was reasonable.

The Fourth Amendment prohibits "unreasonable seizures of the person—specifically, the freedom from excessive uses of

force." *Prosper v. Martin*, 989 F.3d 1242, 1250 (11th Cir.), *cert. denied*, 142 S. Ct. 435 (2021). The touchstone of an excessive force claim is "reasonableness." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 394–95 (1989)). Thus, the ultimate question is whether an officer's conduct was "objectively reasonable" in light of the facts and circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396–97).

"In determining whether the constitutional right at issue was 'clearly established' at the time the officer acted, we ask whether the contours of the right were sufficiently clear that every reasonable officer would have understood that what he was doing violates that right." A plaintiff may show that an officer's force was excessive and violated clearly established law through: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009) (citations omitted). *De minimis* force typically does not support a claim of excessive force in violation of the Fourth Amendment. *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000). However, we have recognized that if an officer does not have probable cause to make an

arrest, any amount of force to achieve that arrest, even *de minimis*, is excessive. *See id*. at 1258.

As we have already explained, given the Lamberts' version of events at the summary judgment stage, we must assume that Officer Herrington did not have even arguable probable cause to arrest the Lamberts. Therefore, even if Officer Herrington used only *de minimis* force, he violated the Lamberts' clearly established right to be free from excessive force. We therefore cannot conclude that Officer Herrington is entitled to qualified immunity as to the Lamberts' excessive force claims against him.

## D. State Law Claims

Officer Herrington further contends that he is entitled to state-law immunity on the Lamberts' false arrest, false imprisonment, and assault and battery claims. Alabama provides law enforcement officers with two forms of immunity relevant here, statutory immunity and state-agent immunity (also known as discretionary-function immunity).

Statutory immunity for law enforcement officers derives from Ala. Code § 6-5-338(a), which provides as follows:

> Every peace officer . . . whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are

lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

State-agent immunity under Alabama law provides immunity from civil liability in a number of circumstances including when a state agent is "[e]xercising judgment in the enforcement of the criminal laws of the state, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons." *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000), *holding modified by Hollis v. City of Brighton*, 950 So. 2d 300 (Ala. 2006).

State-agent immunity does not, however, apply under two circumstances:

> (1) when the Constitution or laws of the United States, or the Constitution of [Alabama], or laws, rules, or regulations of [Alabama] enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or

> (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Id.*

To receive state-agent immunity, a government employee must first demonstrate that he was performing a discretionary

function. *See Giambrone v. Douglas*, 874 So. 2d 1046, 1052 (Ala. 2003). Then, the burden shifts to the plaintiff to show that the government employee's actions render state-agent immunity inappropriate for one of the reasons outlined in *Ex Parte Cranman*. *See id.* The Alabama Supreme Court has said that *Cranman*'s statement of the factors used to determine whether an officer is entitled to common law state-agent immunity also applies when analyzing whether an officer is entitled to statutory immunity. *Ex parte City of Tuskegee*, 932 So. 2d 895, 904 (Ala. 2005); *see also Brown*, 608 F.3d at 741. Thus, we engage in a single analysis for both forms of state law immunity.

The Alabama Supreme Court has recognized that making arrests, as Officer Herrington did, generally constitutes a discretionary function, *Telfare v. City of Huntsville*, 841 So. 2d 1222, 1228 (Ala. 2002), and the Lamberts do not argue on appeal that their arrests were exceptions to that general principle. Officer Herrington therefore contends that absent evidence that he violated a departmental policy or procedure, the Lamberts "must establish that Officer Herrington acted willfully or maliciously so as to deny him discretionary function immunity." But Alabama state law immunity does not apply when a police officer has violated an individual's constitutional rights. *Taylor*, 920 F.3d at 734. And Alabama's probable cause and arguable probable cause standards are essentially the same as their federal counterparts. *Ex parte Harris*, 216 So. 3d 1201, 1213 (Ala. 2016). As we have already explained, viewing the facts and evidence in the light most favorable to the

Lamberts, Officer Herrington did not have even arguable probable cause to arrest the Lamberts or use force to take them into custody. Therefore, we cannot conclude that Officer Herrington is entitled to state-agent or statutory immunity.

## IV.    CONCLUSION

Officer Herrington's arguments ask us to invade the province of the jury by crediting the evidence supporting his version of events in order to clothe him with qualified immunity as well as state statutory and common law immunity. But the procedural posture of this case does not allow us to do so. We express no view on whether Officer Herrington will ultimately prevail on the merits at trial, but for the aforementioned reasons, we affirm the district court's denial of summary judgment.

**AFFIRMED.**